UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| LARRY LACK, | ) | |
| | ) | |
| Plaintiff, | ) | 2:06-cv-02204 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| JOSEPH M. RUSTICK | ) | [Re:  Motion at Docket 52] |
| | ) | |
| Defendant. | ) | |

I.  MOTION PRESENTED

At docket 52, defendant Joseph M. Rustick moves for summary judgment on plaintiff Larry Lack's claim of coinventorship of U.S. Patent No. 5,831,202 (the "'202 patent").  Lack opposes Rustick's motion at docket 60.  Rustick replies at docket 66. Oral argument was heard on April 10, 2009.

II.  BACKGROUND

The parties do not dispute the relevant facts.  In 1992, Lack, an inventor, and Rustick, an arms dealer, joined forces to manufacture a short barrel version of the M-16 machine gun - the "SM-16" - which Lack had been developing.  As Lack had developed it, the SM-16 modified the M-16 by (1) incorporating a gas expansion chamber in a housing at the end of the barrel that would enable the barrel to be shortened from 20

inches to 7 inches; (2) employing an abrupt change in direction in the gas return conduit exiting the gas expansion chamber; and (3) including a full-length sight rail affixed to the expansion chamber housing by means of a screw.  Rustick's contribution to the design involved incorporating the gas conduit directly into the sight rail by milling away some of the metal from the top of the housing to form the sight rail, leaving the inside of the housing unchanged from Lack's original design.

On August 25, 1992, Lack and Rustick executed a licensing agreement ("agreement") regarding the manufacture of the SM-16.  The agreement referred to Lack as "the owner of the entire right, title and interest in and to . . . the 'SM-16'" and granted Rustick the "right and license . . . to make, use and sell the 'SM-16' throughout the United States and in all foreign countries."  In exchange, Rustick promised to manufacture and market Lack's invention and pay Lack a 5% royalty fee on all gross sales of the SM-16.  After entering into the agreement, Lack and Rustick retained a patent attorney - Joseph H. Roediger - to draft an application for the SM-16.  Rustick paid Roediger's fees.  Roediger's memoranda regarding the SM-16 universally refer to Lack as its developer.  During the patent application process, the relationship between Lack and Rustick soured, and Lack terminated the agreement on January 27, 1997.[1] Shortly thereafter, Rustick directed Roediger to change the name of the inventor on the SM-16 patent application from Lack to Rustick, and to proceed with the application. Roediger obliged and filed Rustick's SM-16 patent application with U.S. Patent and Trademark Office ("USPTO") on March 21, 1997.

---

[1]Docket 57 at 1 and Docket 60 at 6.

Rustick's initial application included 14 claims, with one independent claim and

13 dependent claims.  Claim one, the independent claim, read as follows:

> "A muzzle attachment for the barrel of a gas operated weapon of the type
> utilizing the expansion of gas in the bore of the barrel to actuate a gas
> drive mechanism, said attachment modifying the characteristics of the gas
> generated in the barrel upon firing of the weapon to permit a reduction in
> length of the barrel, said attachment comprising:
> a) a housing having the first and second ends with a central passage
> extending therebetween, said passage being aligned with the bore of the
> barrel;
> b) an expansion chamber contained in said housing and communicating
> with the central passage;
> c) an external port located in the housing for connection to a gas drive
> mechanism;
> d) a gas conduit formed in said housing and extending between the port
> and the expansion chamber; and
> e) means for attaching the first end of the housing to the barrel in sealing
> engagement therewith whereby an increase in gas pressure generated by
> the firing of the weapon is modified by the expansion chamber."[2]

Claim two called for the external port to be located in the first end of the housing; claim

three called for the gas conduit to contain an abrupt change in direction; claim four

called for the housing attachment to include a recess formed in the first end of the

housing for receiving the barrel; claim five called for the central passage of the housing

to extend through the expansion chamber; claim six provided that the second end of the

housing contain a means of removably receiving a second attachment device; claim

seven called for a means to secure the housing to the attachment to prevent relative

movement between them; claim eight called for receiving holes and engaging pins to

attach the housing to the barrel; and claim nine called for the housing to include a sight

---

[2]Docket 57-3 at 21.

rail containing the gas conduit and the external port.[3]  Claim 10 related to the full modified barrel, which comprised the barrel itself, the housing described in claim one, and a means of affixing the housing to the distal end of the barrel.[4]  Claim 11 related to the abrupt change in direction of the gas conduit, while claims 12-14 related to the housing attachment recess, the engaging pins, and the central passage.

On August 18, 1997, the initial examiner rejected all of the claims "for failing to particularly point out and distinctly claim the subject matter which the applicant regards as the invention."[5]  Moreover, the examiner rejected claims 1-8 and 10-14 as anticipated by various prior art, which previously disclosed, either individually or read together, a housing unit with central passage containing a gas drive mechanism, gas port, expansion chamber, means of attachment, and a recess.[6]  The examiner did not reject claim nine (calling for "a sight rail for containing the gas conduit and the external port") for anticipating prior art, however, and noted that it "would be allowable if rewritten to overcome the rejection [for lack of particularity] . . . and to include all of the limitations of the base claim and any intervening claims."[7]

In response to the USPTO's rejection, Rustick filed an amended application on December 11, 1997.  Rustick amended his claims in accordance with the examiner's

_____

[3]*Id.* at 22.

[4]*Id.* at 23.

[5]*Id.* at 36.

[6]*Id.* at 36-40.

[7]*Id.* at 40.

suggestions.  Specifically, Rustick cancelled independent claim one and dependent

claims two through five, seven and nine, combining them instead in new independent

claim 15.  New independent claim 15 read as follows:

> "A muzzle attachment for the barrel of a gas-operated automatic weapon
> of the type utilizing the expansion of gas in the bore of the barrel to
> actuate a gas drive mechanism, said attachment modifying the
> characteristics of the gas generated in the barrel upon firing of the weapon
> to permit a reduction in length of the barrel, said attachment comprising:
> a) a housing having the first and second ends with a central passage
> extending therebetween, said first end including a recess for receiving the
> barrel therein, said passage being aligned with the bore of the barrel;
> b) a sight rail formed on said housing;
> c) an expansion chamber contained in said housing and communicating
> with the central passage;
> d) an external port located in said sight rail for connection to said gas drive
> mechanism;
> e) a gas conduit formed in said muzzle attachment and extending between
> the port and the expansion chamber, said gas conduit including an abrupt
> change in direction; and
> e) means for removably attaching the first end of the housing to the barrel
> in sealing engagement therewith whereby an increase in gas pressure
> generated by the firing of the weapon is modified by the expansion
> chamber.[8]

Rustick also amended claim 10 to include the limitations of claim nine by adding a

reference to the sight rail, with the gas conduit running through the rail, to be located

atop the muzzle housing.  Rustick left intact dependent claims six and eight, which

addressed the attachment of the muzzle to the distal end of the barrel, as well as claims

11-14, which addressed the gas conduit and the housing attachment and central

passage.

On January 5, 1998, the examiner sent a notice of allowability indicating that

Rustick's claims were accepted as amended.  U.S. Patent No. 5,831,202 (the "'202

---

[8]Docket 57-5 at 24.

patent") subsequently issued on November 3, 1998.  Upon learning of the '202 patent in 2006, Lack filed this suit, claiming, among other things, co-inventorship and damages for theft of the SM-16.  Rustick moved for summary judgment on Count I on the ground that Lack did not provide any contribution to the '202 patent because he did not contribute to the alleged sole patentable feature of the muzzle - the sight rail forming the gas conduit.  Moreover, Rustick claims that Counts II-V should be dismissed because they are strictly related to Count I.  Finally, Rustick argues that Count VI should be dismissed because it is undisputed that Lack terminated the agreement.  Lack opposes Rustick's motion on the ground that the '202 patent would not have been possible but for Lack's teachings to Rustick regarding the gas expansion chamber/gas conduit/sight rail combination.  The court addresses the parties' arguments below.

### III. STANDARD OF REVIEW

The Federal Circuit Court of Appeals has recognized the general proposition that "[s]ummary judgment is appropriate in a patent case, as in other cases."[9]  Summary judgment on a patent claim is governed by the same standards as for other types of claims.[10]  Federal Rule of Civil Procedure 56 provides that summary judgment should be granted when there is no genuine dispute about material facts and when the moving party is entitled to judgment as a matter of law.  The moving party has the burden to show that material facts are not genuinely disputed.[11]  To meet this burden, the moving

---

[9]*Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994).

[10]*Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560-61 (Fed. Cir. 1988).

[11]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[12]  Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial.[13]  The court must view this evidence in the light most favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party.[14]

On a motion for summary judgment, the Court shall "view the evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits."[15]  Where, as here, the clear and convincing standard is applicable, a nonmovant cannot survive summary judgment by presenting facts sufficient to satisfy the preponderance of the evidence standard.[16]  The clear and convincing standard has been defined by the Supreme Court as follows: "if [the plaintiff] could place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable.'"[17]  The Court continued, "[t]his would be true, of course, only if the material [plaintiff] offered instantly tilted the evidentiary scales in the affirmative when

---

[12]*Id.* at 325.

[13]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[14]*Id.* at 255; *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006) (citation omitted).

[15]*Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

[16]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-556 (1986).

[17]*Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (citing C. McCormick, Law of Evidence § 320, p. 679 (1954)).

weighed against the evidence ... offered in opposition."[18]  Because patent issuance

creates a presumption that the named inventors are the true and only inventors,[19] an

alleged co-inventor's testimony respecting the facts surrounding a claim of derivation or

priority of invention cannot, standing alone, rise to the level of clear and convincing

proof.[20]

Moreover, because there is a great "temptation for even honest witnesses to

reconstruct, in a manner favorable to their own position, what their state of mind may

have been years earlier," the rule is the same for an alleged co-inventor's testimony.[21]

Thus, an alleged co-inventor must supply evidence to corroborate his testimony.[22]

Whether the inventor's testimony has been sufficiently corroborated is evaluated under

a "rule of reason" analysis.[23]  Under this analysis, "[a]n evaluation of all pertinent

[corroborating] evidence must be made so that a sound determination of the credibility

of the [alleged] inventor's story may be reached."[24]  Such corroborating evidence may

---

[18]*Colorado*, 467 U.S. at 316 (citing McBaine, Burden of Proof: Degrees of Belief, 32 Calif. L. Rev. 242, 251-54 (1944)). *See also Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 282 (1990) (labeling the clear and convincing evidence standard as an "intermediate standard"); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988);

[19]*Hess v. Advanced Cardiovascular Systems, Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997).

[20]*Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993).

[21]*Hess*, 106 F.3d at 980.

[22]*Price*, 988 F.2d at 1194.

[23]*Id.* at 1195.

[24]*Id.*

take a variety of forms, including contemporaneous documents prepared by a putative inventor, circumstantial evidence about the inventive process, and oral testimony by a person other than the named inventor.[25]  Reliable evidence "preferably comes in the form of physical records that were made contemporaneously with the alleged prior invention."[26]

## IV.  DISCUSSION

The question for the court is whether Lack has provided corroborating evidence of his patentable contribution to the SM-16 muzzle attachment, as the SM-16 is claimed in the '202 patent, that "could place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable.'"[27]  Section 256 of the Patent Code provides that if "through [inadvertent] error an inventor is not named in an issued patent ... the Commissioner [of Patents] may ... issue a certificate correcting such error," and that "[t]he court ... may order correction of the patent ... and the Commissioner shall issue a certificate accordingly."[28]  A patented invention may be the work of two or more joint inventors.[29]  Because "[c]onception is the touchstone of inventorship," each joint inventor must generally contribute to the conception of the invention.[30]  "Conception is

---

[25]*Ethicon v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998).

[26]*Trovan v. Sokymat SA*, 299 F.3d 1292, 1302 (Fed. Cir. 2002).

[27]*Colorado*, 467 U.S. at 316

[28]35 U.S.C. § 256.

[29]*Id.* § 116.

[30]*Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994).

the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'"[31]  An idea is sufficiently "definite and permanent" when "only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation."[32]  The conceived invention must include every feature of the subject matter claimed in the patent.[33]  For the conception of a joint invention, each of the joint inventors need not "make the same type or amount of contribution" to the invention.[34]  Rather, each needs to contribute only a part.

On the other hand, one does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention.[35]  One who simply provides the inventor with well-known principles or explains the state of the art without ever having "a firm and definite idea" of the claimed combination as a whole does not qualify as a joint inventor.[36]  Depending on the scope of a patent's claims, one of ordinary skill in the art who simply reduced the inventor's idea to practice is not necessarily a joint inventor, even if the specification discloses that embodiment to

---

[31]*Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986) (quotations and citation omitted).

[32]*Burroughs Wellcome*, 40 F.3d at 1228.

[33]*Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994).

[34]35 U.S.C. § 116.

[35]*Sewall*, 21 F.3d at 416-17; *see also Frugoli v. Fougnies*, 74 U.S.P.Q. 2d 1716, 1733 (D. Ariz. 2004) ("Where one does not contribute to conception, the mere aiding of the real inventor in reducing an idea to practice by the exercise of ordinary skill does not make one an inventor.").

[36]*Hess*, 106 F.3d at 981.

satisfy the best mode requirement.[37]  A co-inventor need not make a contribution to every claim of a patent.[38]  A contribution to one claim is enough.[39]  Thus, the critical question for joint conception is who conceived, as that term is used in the patent law, the subject matter of the claims at issue.   Where an alleged co-inventor contributes only insignificant or non-inventive elements, it is appropriate to deny the claim.[40]

Aside from some photographs of the SM-16 prototypes, Lack has not provided any corroborating evidence of his contribution to the conception of SM-16 muzzle. Given the presumption of validity associated with a decade-old patent, and the high burden Lack must meet to establish his claim of coinventorship, the court concludes that Lack has failed to submit evidence that would tilt the evidentiary scales in favor of his claim of coinventorship.  As an initial matter, Lack has failed to refute Rustick's contentions with respect to the development of the '202 patent.  For example, Rustick testified at his deposition that he conceived of the SM-16 as patented independently of Lack, and that Lack's weapon as conceived did not work.[41]  Moreover, Rustick testified that he, not Lack, removed the perforated barrel from the gas expansion chamber.[42] Rustick also claimed at his deposition that he developed the transverse engaging pins

---

[37] *Sewall*, 21 F.3d at 416.

[38] *See* 35 U.S.C. § 116.

[39] *See SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 888 (Fed. Cir. 1988).

[40] *Caterpillar, Inc. v. Sturman Industries, Inc.*, 387 F.3d 1358, 1377-78 (Fed. Cir. 2004).

[41] Docket 65-4 at 12.

[42] *Id.* at 16.

to fasten the housing to the barrel.[43]  Rather than provide contemporaneous evidence or testimony from a corroborating witness refuting these contentions, Lack submits only pictures of various SM-16 prototypes and his own testimony.  Such evidence is not sufficient, by itself, to corroborate a claim of coinventorship of a decade-old patent.

Furthermore, Lack's contention that he should be deemed a co-inventor on the theory that his contributions rendered the SM-16 muzzle a combination claim necessarily fails because his contributions were not novel.   "Combination claims can consist of new combinations of old elements or combinations of new and old elements."[44]  Furthermore, "[i]t is well established in patent law that a claim may consist of all old elements, . . . for it may be that the combination of the old elements is novel and patentable."[45]  This principle applies equally where a claim "consists of all old elements and one new element."[46]  The examiner rejected the majority of Rustick's original claims, standing alone or in combination, on the ground that the housing, gas expansion chamber, gas conduit (including the abrupt change in direction disclosed in initial claim three), external port, central passage, and recess were all anticipated by the prior art.  Lack's contributions were limited to old elements, which were themselves not patentable.  Even dependent claim 3 - which claimed a gas conduit with an "abrupt change in direction" - was found by the initial examiner to be anticipated by the prior art.

---

[43]*Id.* at 17.

[44]*Clearstream Wastewater Systems, Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1445 (Fed. Cir. 2000).

[45]*Id.*

[46]*Id.*

Lack's contention that this "abrupt change in direction" was an entirely new element is supported only by diagrams of earlier gas conduits without an abrupt change in direction, which do not clearly convince the court of this element's novelty.

Finally, the '202 patent appears to have been allowed only on the ground that the gas conduit exited through the base of the sight rail.[47]  Rustick does not dispute that Lack initially conceived of the muzzle attachment housing, which originally contained a gas expansion chamber and a gas conduit with an abrupt change in direction, and on top of which a sight rail was affixed by means of a screw.  However, it was Rustick who altered the design of Lack's initial conception by forming the sight rail directly from the housing, such that the gas conduit would pass through the lower portion of the sight rail. The examiner's initial rejection letter indicated that without this feature, the muzzle was not patentable.  In short, the examiner's initial rejection, and the '202 patent that subsequently issued, reveal that the conduit formed inside the sight rail was "the only element that was deemed patentable."[48]  Therefore, because Lack's conceived invention did not include every feature of the subject matter claimed in the patent,[49] the court concludes that Lack cannot place "in the ultimate factfinder an abiding conviction that the truth of [his] factual contentions are 'highly probable.'"

---

[47]Although Roediger - who was jointly hired by Lack and Rustick to prosecute the SM-16 patent - noted on July 3, 1996 that Lack "developed" the weapon for Rustick, the incarnation of the muzzle that Lack presented to Rustick was ultimately rejected by the USPTO.  Docket 65-3 at 5.  Moreover, Roediger's description of Lack as the "developer" of the SM-16 muzzle attachment is not conclusive of Lack's contribution to the conception of the muzzle as allowed in the '202 patent.

[48]Docket 57 at 10.

[49]*Sewall,* 21 F.3d at 415.

**Counts II-V and Count VI**

Because Rustick's summary judgment motion on Count I is granted, and Counts II-V emanate from Count I, the court dismisses Counts II-V.  With respect to Count VI, it is undisputed that Lack terminated the agreement on January 27, 1997.  Therefore, the court concludes that Count VI (Breach of Contract) should likewise be dismissed.

## V.  CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment at docket 52 is **GRANTED**.  The Clerk is directed to please enter judgment accordingly.

DATED at Anchorage, Alaska, this 15th day of April 2009.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE